**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000207
31-MAY-2019
08:00 AM**

NOS. CAAP-16-0000207 AND CAAP-15-0000891

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MARLENE TIM SING, individually and as Next Friend to her
daughter, Makalika Tim Sing, a minor, and as Personal
Representative for the Estate of DALE KANANI TIM SING, Deceased;
DALE CORDERO, KALE TIM SING, and LOKELANI TIM SING,
Plaintiffs-Appellants,
v.
KONRAD K. MOSSMAN, HUIHUI LAVON KANAHELE-MOSSMAN,
Defendants/Cross-Claim Plaintiffs/Cross-Claim
Defendants/Appellees,
and
COUNTY OF HAWAI'I, Defendant/Cross-Claim Defendant/
Cross-Claim Plaintiff/Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE NONPROFIT CORPORATIONS 1-10;
DOE GOVERNMENTAL ENTITIES 1-10, inclusive,
Defendants
(CIVIL NO. 05-1-0297)

AND

KASSY ASTRANDE, individually and as Guardian Ad Litem of
MCKENZIE TIM SING, a minor, Plaintiffs-Appellees,
v.
KONRAD K. MOSSMAN, HUIHUI LAVON KANAHELE-MOSSMAN,
Defendants/Cross-Claim Plaintiffs/Cross-Claim
Defendants/Appellees,
and
COUNTY OF HAWAI'I, Defendant/Cross-Claim Defendant/
Cross-Claim Plaintiff/Appellee,
and

JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE NONPROFIT CORPORATIONS 1-10;
DOE GOVERNMENTAL ENTITIES 1-10, inclusive,
Defendants
(CIVIL NO. 05-1-0413)

APPEALS FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT

MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Fujise and Leonard, JJ.)

These appeals arise out of two consolidated personal injury lawsuits.  Plaintiffs-Appellants Marlene Tim Sing, individually, as next friend to her daughter Makalika Tim Sing, a minor, and as personal representative for the Estate of Dale Kanani Tim Sing, deceased, Dale Cordero, Kale Tim Sing, and Lokelani Tim Sing (**Tim Sing Plaintiffs**), appeal from Judgments entered on October 19, 2015 and March 4, 2016,[1] by the Circuit Court of the Third Circuit (**Circuit Court**).[2]

On appeal, the Tim Sing Plaintiffs contend the Circuit Court erred by: (1) granting motions to enforce settlement agreements filed by Defendants-Appellees Konrad K. Mossman (**Konrad Mossman**) and Huihui Lavon Kanahele-Mossman (**Kanahele-Mossman**) (collectively **the Mossmans**), and Defendant-Appellee County of Hawai'i (**County**); and (2) deciding the allocation of

---

[1]  The Circuit Court filed an order on March 4, 2016, purporting to grant the Mossmans' motions for reconsideration of the October 19, 2015 judgment, and purportedly vacating the October 19, 2015 judgment.  The March 4, 2016 judgment was then entered.  However, the March 4, 2016 order was entered more than ninety days after the Mossmans' had filed their October 29, 2015 motions for reconsideration.  Thus, the motions for reconsideration were deemed denied by operation of Hawaii Rules of Appellate Procedure (**HRAP**) Rule 4(a)(3).  In this case, therefore, it appears that the operative judgment is the October 19, 2015 judgment.  Although the October 19, 2015 judgment is oddly worded and perhaps inconsistent with parts of the record, it purports to dismiss some, but not all, of the claims in the underlying cases, and it contains the necessary language for a judgment under Rule 54(b) of the Hawai'i Rules of Civil Procedure.

[2]  The Honorable Glenn S. Hara presided.

the settlement proceeds over the objections of the Tim Sing Plaintiffs and without a jury determination on the matter.

For the reasons discussed below, we vacate and remand.

## I. Background

In the late hours of August 4, 2005 or the early morning hours of August 5, 2005, Konrad Mossman or Kanahele-Mossman was allegedly driving the Mossmans' pickup truck on Kahaopea Road in the County of Hawai'i when the pickup truck struck Dale Kanani Tim Sing (**Dale Tim Sing**). Dale Tim Sing was pronounced dead on the morning of August 5, 2005.

Marlene Tim Sing and Dale Cordero are the parents of Dale Tim Sing, and the rest of the Tim Sing Plaintiffs are the siblings of Dale Tim Sing. Plaintiff Kassy Astrande (**Astrande**) was Dale Tim Sing's girlfriend, with whom he had a child, McKenzie Tim Sing (**McKenzie**).

## A. Lawsuits

Two personal injury lawsuits arose from Dale Tim Sing's death: (1) a lawsuit filed by the Tim Sing Plaintiffs in Civil No. 05-1-0297; and (2) a lawsuit filed by Astrande, individually and as Guardian Ad Litem of McKenzie (collectively **the Astrande Plaintiffs**) in Civil No. 05-1-0413.

On June 5, 2006, the Circuit Court consolidated the two cases.

On June 27, 2008, the Tim Sing Plaintiffs filed a second amended complaint against the Mossmans, the County, and the Edith K. Kanaka'ole Foundation (the **Foundation**), asserting (1) wrongful death; (2) negligent infliction of emotional distress; and (3) spoliation. The Mossmans, the County, and the Foundation filed answers and asserted cross-claims against each other.

On July 2, 2008, the Astrande Plaintiffs filed a second amended complaint for negligence against the Mossmans, the County, and the Foundation.

### B. Settlement

On February 7, 2011, the Circuit Court entered an order ruling that the County had settled all claims "between Plaintiffs and the County" in good-faith.

On March 2, 2011, counsel for the Tim Sing Plaintiffs filed a Motion to Withdraw as Counsel for Dale Cordero.

On April 4, 2011, the Circuit Court entered an order ruling that the Mossmans had settled all claims with the Tim Sing Plaintiffs and the Astrande Plaintiffs in good faith.

On April 15, 2011, the Circuit Court held a hearing on the Motion to Withdraw as Counsel for Dale Cordero, filed by the Tim Sing Plaintiffs' counsel. On April 18, 2011, counsel for the Tim Sing Plaintiffs also filed a Motion to Withdraw as Counsel as to the remaining Tim Sing Plaintiffs. On May 25, 2011, the Circuit Court held another hearing. During the two hearings, the Tim Sing Plaintiffs argued that they had not authorized their counsel to settle any of the claims against the Mossmans or the County and that they did not agree to the settlements.

On August 26, 2011, the County filed a motion to enforce its settlement agreement with the Tim Sing Plaintiffs. On August 31, 2011, the Mossmans filed motions to enforce their settlement agreement with the Tim Sing Plaintiffs.

On August 31, 2011, the Tim Sing Plaintiffs filed a motion to, *inter alia*, set aside both of the settlement agreements, contending they had never given any authority to their prior counsel to settle their claims against the Mossmans or the County.

On October 7, 2011, the Circuit Court held a hearing at which it heard arguments regarding, *inter alia*, the County and the Mossmans' motions to enforce the settlements, respectively,

4

and the Tim Sing Plaintiffs' motion to set aside the settlements. In deciding these motions, the Circuit Court relied on the parties' written submissions and various declarations and exhibits. No evidentiary hearing was held (*i.e.*, there was no witness testimony in court).

Subsequently, the Circuit Court granted the County and the Mossmans' motions to enforce the settlement agreements, respectively, and denied the Tim Sing Plaintiffs' motion to set aside the settlement agreements.

After multiple entries of prior judgments, attempts to appeal, and dismissals for lack of appellate jurisdiction, the October 19, 2015 and March 4, 2016 judgments were entered. These appeals followed, and CAAP-15-0000891 and CAAP-16-0000207 were consolidated.

## II. Standards of Review

### A. Enforcement of a Settlement Agreement

"A trial court's determination regarding the enforceability of a settlement agreement is a conclusion of law reviewable *de novo*. Whether the parties in fact entered into an agreement is essentially a question of fact." Assocs. Fin. Servs. Co. of Hawaiʻi, Inc. v. Mijo, 87 Hawaiʻi 19, 28, 950 P.2d 1219, 1228 (1998) (citations omitted).

> A motion to enforce a disputed settlement agreement is treated as a motion for summary judgment. Miller v. Manuel, 9 Haw. App. 56, 64, 828 P.2d 286, 292 (1991), cert. denied, 72 Haw. 618, 841 P.2d 1075 (1992). A motion for summary judgment should not be granted where there is a factual question as to the existence, validity, and terms of the alleged settlement agreement, and where such a dispute exists, a trial or an evidentiary hearing to resolve the dispute is required. Id. at 64-65, 828 P.2d at 292.

Gilmartin v. Abastillas, 10 Haw. App. 283, 296, 869 P.2d 1346, 1352 (1994).

> [S]ummary judgment standards appl[y] to a hearing on a motion to enforce a settlement agreement. Therefore, a motion to enforce a settlement agreement may not be decided summarily if there is any question of fact as to whether a mutual, valid, and enforceable settlement agreement exists between the parties. If there is a question of fact as to the existence of a mutual, valid, and enforceable settlement agreement, an evidentiary hearing must be held.

Moran v. Guerreiro, 97 Hawaiʻi 354, 371, 37 P.3d 603, 620 (App.

2001) (citing <u>Miller v. Manuel</u>, 9 Haw. App. at 64, 828 P.2d at 292).

### B. Allocation of Settlement Proceeds Without a Jury

"We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." <u>State v. Hanapi</u>, 89 Hawai'i 177, 182, 970 P.2d 485, 490 (1998) (citation omitted).

### III. Discussion

### A. Enforcement of Settlement Agreements

In ruling to enforce the settlement agreements and denying the Tim Sing Plaintiffs' motion to set aside the settlements, the Circuit Court applied the summary judgment standard, determined that there were no genuine issues of material fact, and held that counsel for the Tim Sing Plaintiffs had apparent authority to enter the settlements and that the Tim Sing Plaintiffs ratified the settlements.

The Tim Sing Plaintiffs contend that the Circuit Court erred because there were genuine issues of material fact given the declarations submitted to the court. They further contend that they did not ratify the settlements, that Hawai'i courts have not adopted apparent authority in these circumstances, and even if apparent authority could be applied, the elements were not met in this case.

It is undisputed that counsel for the Tim Sing Plaintiffs did not have written authority to enter into the settlement agreements.

Hawaii Revised Statutes (**HRS**) § 605-7 (2016) provides:

> **HRS § 605-7 Control of action; power to settle.** The practitioners licensed by the supreme court shall have control to judgment and execution, of all suits and defenses confided to them; <u>provided that no practitioner shall have power to compromise, arbitrate, or settle such matters confided to the practitioner, unless upon special authority in writing from the practitioner's client</u>.

(Emphasis added).

The Hawai'i Supreme Court has held that pursuant to HRS § 605-7, the express written consent of the client is typically required in settlement proceedings. Hawai'i Hous. Auth. v. Uyehara, 77 Hawai'i 144, 150, 883 P.2d 65, 71 (1994); see also Cook v. Sur. Life Ins. Co., 79 Hawai'i 403, 410, 903 P.2d 708, 715 (App. 1995) (holding that "ordinarily, an attorney must have the written authority of the client to settle in order to settle a matter on behalf of a client.").[3]

In this case, the Circuit Court applied two exceptions to the HRS § 605-7 requirement that an attorney have written consent to settle matters on behalf of a client -- apparent authority and ratification. Apparent authority in the context of an attorney settling litigation claims has not been adopted in Hawai'i. It was discussed in Cook, where this court stated: "[a]ssuming arguendo, that apparent authority is an exception to the special written authority requirement, we do not find it applicable here." 79 Hawai'i at 410, 903 P.2d at 715 (noting also that in Nelson v. Boone, 78 Hawai'i 76, 890 P.2d 313 (1995), "issue raised but not decided").[4] Apparent authority is not currently recognized in Hawai'i as an exception to the written authority requirement in HRS § 605-7. As stated in Cook:

> [t]he requirement that actual authority to settle be memorialized in writing is highly protective of a client's interests, shielding the client from an attorney's unauthorized representations. A statute, such as HRS § 605-7, is plainly intended to restrict such authority, to remove all doubt from its exercise, and to establish that a client's direction, in this area, is paramount. Certainly, the statute clearly establishes a "bright line" rule readily understood by the client, conveniently administered by the attorney, and easily applied by the court. . . .
> HRS § 605-7 is plain and straightforward. Generally, in the absence of "special authority in writing" from clients to settle, an attorney has no authority to settle.

79 Hawai'i at 412, 903 P.2d at 717.

---

[3] Case law provides that "an attorney cannot have implied authority to settle." Cook, 79 Hawai'i at 410, 903 P.2d at 715 (citing Uyehara, 77 Hawai'i at 150, 883 P.2d at 71).

[4] In Nelson, the Hawai'i Supreme Court stated that an attorney who had entered an agreement to sell property on behalf of clients "had actual or apparent authority[.]" 78 Hawai'i at 82, 890 P.2d at 319. Nelson did not involve an attorney settling litigation claims, and it did not address whether apparent authority was an exception to HRS § 605-7.

On the other hand, ratification as an exception to the written authority requirement in HRS § 605-7 is well-settled. "The unauthorized act of an agent, if ratified, is as binding upon the principal as an original express grant of authority." Uyehara, 77 Hawai'i at 150, 883 P.2d at 71 (brackets omitted); McKeague v. Freitas, 40 Haw. 108, 113 (1953). "Therefore, a settlement will be treated as binding even in the absence of the express written consent of the client where the client ratifies the settlement." Cook, 79 Hawai'i at 411, 903 P.2d at 716 (emphasis added). In that regard,

> [t]he ratification may be express or it may be implied from circumstances; whether or not the circumstances warrant the implication of ratification must of course depend upon the facts of each particular case. Any failure on the part of the client to object to an unauthorized act within a reasonable time after becoming aware of it will be constructed as a ratification of it.

Id. (quoting Scott v. Pilipo, 25 Haw. 386, 390 (1920)).

The Hawai'i Supreme Court has held a settlement valid, even in the absence of written authorization, where the client ratified the settlement. Uyehara, 77 Hawai'i at 150-51, 883 P.2d at 71-72.

Here, as noted, it is undisputed that the Tim Sing Plaintiffs did not give their counsel written authority to enter into the settlement agreements on their behalf. Moreover, based on our de novo review,[5] we disagree with the Circuit Court's ruling that there are no genuine issues of material fact. Rather, in light of the multiple and conflicting declarations and exhibits, including among others, the declarations of Dale Cordero, Marlene Tim Sing, the other Tim Sing Plaintiffs, Michael Green, and Ricky Damerville, we conclude there are genuine issues of material fact as to whether the Tim Sing Plaintiffs ratified the settlement agreements.

---

[5] Given the applicable summary judgment standard for purposes of reviewing the Circuit Court's rulings on the motions to enforce or set aside the settlements, and because the Circuit Court did not hold an evidentiary hearing, we review the record de novo and are not bound by the "findings" of the Circuit Court.

The County submitted forms entitled "Medicare, Medicaid, and SCHIP Extension Act of 2007 Required Information" applicable to individual Tim Sing Plaintiffs and which contain handwritten information for them, as well as a W-9 tax identification form filled out by counsel for the Tim Sing Plaintiffs. The County contends these forms show the Tim Sing Plaintiffs' acknowledgment and ratification of the settlement with the County. Although these documents might be evidence of knowledge and ratification by the Tim Sing Plaintiffs regarding the settlement with the County, there is nothing expressly stated in these documents as to the settlement. The declarations by the Tim Sing Plaintiffs disavow that they agreed to any alleged settlement.

The Mossmans, in turn, contend that the Tim Sing Plaintiffs ratified their settlement with the Mossmans, especially given conversations and meetings that Dale Cordero and Marlene Tim Sing had with Ricky Damerville, who was criminally prosecuting Konrad Mossman for the incident resulting in Dale Tim Sing's death. Damerville's declaration indicates, among other things, that: in December of 2010, he met with Dale Cordero and Marlene Tim Sing and was advised that they had settled their civil case, that they could not tell him the details because of a confidentiality clause, but that Konrad Mossman would be personally responsible for part of the settlement; Damerville later confirmed with the Tim Sing Plaintiffs' counsel that a settlement was reached in the civil case, because the willingness of a criminal defendant to pay restitution was an important factor in resolving the criminal case; after confirming the civil case was settled, Damerville transmitted a plea offer in the criminal case in January 2011, Konrad Mossman changed his plea pursuant to the offer, and sentencing in the criminal case was scheduled for February 23, 2011; in preparation for the sentencing hearing, Damerville met with Dale Cordero and Marlene

Tim Sing in January 2011, at which point he was informed they could not say anything at the sentencing hearing due to the settlement agreement; in February 2011, Damerville met twice with Dale Cordero and Marlene Tim Sing and was informed by Dale Cordero that he was firing his counsel and wanted to speak at the sentencing hearing; and that Dale Cordero never said that his counsel had settled the civil case without his knowledge or consent.

In response, a declaration by Dale Cordero directly contests the declaration by Damerville on multiple fronts. Cordero reiterates that he never agreed to any settlements entered by his former counsel. He also attests, among other things, that:

> 6. The statements in Ricky Damerville's declaration and in other statements that I knew of the details of the settlement agreement and that I knew that the details of the settlement agreement were confidential on or about December 29, 2010 are false. I did not know of such a settlement agreement, nor of the confidentiality clause as asserted by Mr. Damerville when we met in his office.

Similarly, Marlene Tim Sing submitted a declaration that directly contests Damerville's declaration, particularly that she knew the details of any settlement agreement.

Regarding the disputed facts pertaining to ratification,

> summary judgment standards appl[y] to a hearing on a motion to enforce a settlement agreement. Therefore, a motion to enforce a settlement agreement may not be decided summarily if there is any question of fact as to whether a mutual, valid, and enforceable settlement agreement exists between the parties. If there is a question of fact as to the existence of a mutual, valid, and enforceable settlement agreement, an evidentiary hearing must be held.

Moran, 97 Hawai'i at 371, 37 P.3d at 620 (emphasis added), (citing Miller, 9 Haw. App. at 64, 828 P.2d at 291-92).

Accordingly, we remand for an evidentiary hearing regarding whether the Tim Sing Plaintiffs ratified the settlement agreements and are therefore bound by them.

### B.    Allocation of Settlement Proceeds Without a Jury

The Tim Sing Plaintiffs assert that the Circuit Court erred when it decided and allocated the settlement proceeds among the plaintiffs, over the objections of the Tim Sing Plaintiffs, and without a jury determination on the matter.  Specifically, the Tim Sing Plaintiffs argue that they had a right to a jury trial under the Hawai'i State Constitution, under HRS § 635-13 (2016), and under Hawai'i Rules of Civil Procedure Rule 38(a), and that they did not waive that right.

Kanahele-Mossman asserts that, under the terms of the settlement agreement, the parties agreed that if the Tim Sing Plaintiffs and Astrande could not agree on the division of the settlement proceeds, the parties would authorize the Circuit Court to make the determination.  In the record, the declaration of Kanahele-Mossman's counsel, Thomas Yeh, indicates the same. The declaration of Michael Green states in relevant part: "I specifically remember Mr. Cordero asking me how the total sum of the partial settlement would be divided.  After my explanation he told me it was alright."  Further, Damerville's declaration indicates that from his meetings with Dale Cordero and Marlene Tim Sing, he recalled that there was a dispute in the civil suit about how the settlement proceeds would be disbursed among the plaintiffs, that the circuit court would make that decision, and that Dale Cordero and Marlene Tim Sing did not expect to receive anything from the settlement.  It therefore appears that the question of allocation of the settlement proceeds between and among the plaintiffs must also be addressed as part of the remand on the settlement agreement; that is, whether there was an agreement ratified by the Tim Sing Plaintiffs regarding the allocation of the settlement funds.  We thus do not reach the question raised by the Tim Sing Plaintiffs as to whether they were entitled to a jury decision on that issue.

### IV. Conclusion

For the above reasons, we vacate the judgments entered on October 19, 2015 and March 4, 2016, by the Circuit Court of

the Third Circuit.  We remand for further proceedings consistent with this Memorandum Opinion.

DATED:  Honolulu, Hawai'i, May 31, 2019.


On the briefs:

Richard Naiwieha Wurdeman,
for Plaintiffs-Appellants.

J. Patrick Gallagher,
Leah M. Reyes,
(Gallagher Kane Amai)
for Defendant-Appellee,
Konrad K. Mossman.

Thomas L.H. Yeh,
Michael W. Moore,
(Law Offices of Yeh & Moore, LLLC)
        and
Jill D. Raznov,
(Of Counsel)
for Defendant-Appellee,
Huihui Lavon Kanahele-Mossman.

Andrew S. Iwashita,
        and
Nelson H. Kinoshita,
for Plaintiff-Appellees,
Kassy Astrande, individually
and as Guardian Ad Litem of
McKenzie Tim Sing, a minor.

Douglas H. Knowlton,
for Defendant-Appellee,
County of Hawai'i.

Chief Judge

Associate Judge

Associate Judge